Good morning, Your Honor. Suzanne Luban for Mr. Hawley, who is present attending the arguments. I'd like to reserve three minutes for rebuttal. So Excuse me. There's some melody playing somewhere. If anybody knows where it's coming from or what it is, could you stop it? It makes it a little hard to hear the words. Could you start my time over, please? Please start your time over. Thank you. I think I'm going to need all that I can get. So first I'd like to address the Confrontation Clause argument. The Confrontation Clause includes a meaningful opportunity to present a complete defense and to discredit the witness's credibility, and not only in the way that the state court anticipated. So the state court found, both the trial court and the appellate court, that the evidence of the young girl, the 12-year-old girl, making basically sexual comments and repeating that other people had desired her sexually, that those things were irrelevant. And so the state court then did not go on to balance Mr. Hawley's right to introduce that evidence. But the right to confront that witness, particularly in a child sex case, includes much more than just whether those statements that she repeated were false, but also the qualities of the witness that would discredit her in front of the jury. And that would include, in particular in this case, the tone and the ability of that. I'm sorry. Counsel, let me tell you what my problem is with your case as you can address it. I think, frankly, that you're right. And if it were a direct appeal, I'd be inclined to reverse for abuse of discretion. I thought the evidence that came in, the prejudice, the unfair prejudice very clearly outweighed the probative value. Using playboy to show that somebody's a pedophile is ridiculous. And I thought what was kept out, that this little girl is talking about sex with everybody and his brother, literally her brother, was relevant to show fantasizing. But it's really hard under the AEDPA, where it's a state court, to reach any of that, because it's hard to say that it's an unreasonable application of or clearly contrary to, as opposed to just an abuse of discretion. So could you help on that? Yes, Your Honor. Thank you. Well, in particular with regard to the sex talk evidence, which basically disabled Mr. Hawley from making, or his lawyer, making any, refuting any of the arguments that the prosecutor made. In particular, it was so highly prejudicial in this case because the prosecutor in his closing, everything he said about her would have been refuted by this evidence. So he says that she's very naive and that she's not sophisticated enough to make up a story like this. Yet there's obviously evidence that she's not naive and she is sophisticated. And there was testimony that she and her brother spoke before they came and told their mother. And she told him and he agreed as to what happened. So this is a little boy who clearly in the evidence was dedicated to his sister and very worried about protecting her. And so that's another thing, is the state court found that there was no evidence of falsity. But, in fact, the trial court dismissed the possibility that it was even true. On ER 152, he says that may be an absolutely true story. And she goes on to say that this young lady, that her brother may have tried to get in bed with her, and that may be her total perception of what her brother tried to do. Counsel, if I could just get you to focus a little bit more on what Judge Kleinfeld said. And you should know I feel very much the same way. But the key here is under AEDPA, we have to rely upon clearly established federal law, and specifically as interpreted by the Supreme Court. So what cases do you refer to from the Supreme Court or once established by the Supreme Court where it's been refined by our court that buttress your client's position on the confrontation point and on the, for that matter, the magazine point? Well, okay. First on the confrontation point. The Lucas and Davis v. Alaska and Van Arsdale, these are not cases specifically involving sex talk by children, but they specifically talk about requiring if the jury would have a significantly different impression of the witness. And that is clearly the case here highlighted by the prosecutor's arguments. And this is not a case, of course, where the child victim is so small and you don't want her to be on the stand. She took the stand, right? She took the stand, and as you read her testimony, she did not seem to be traumatized. In fact, she seemed to be enjoying the attention, which is part of the point of this evidence that this is a child who enjoyed attention around sexual issues. So is it fair to say that from your perspective, Davis v. Alaska, Delaware v. Van Arsdale, and perhaps Michigan v. Lucas, are your Supreme Court-touched lodestones, if you will, from which our analysis needs to proceed? Yes. And in particular, I'm glad you mentioned Lucas, because Lucas is the case that deals with the rape shield law. And although in that case it determined that the balancing that was required fell down in favor of protecting the adult, in that case, woman, the complaining witness, and so the rape shield law could overcome the Defendant's Sixth Amendment right, it's clear that there must be a case-by-case balancing in each case. In this case, the State court never considered the value to the defense for presenting this evidence because the State court made an unreasonable interpretation of the facts by finding it wasn't relevant at all. For analysis purposes, what role do our own, that is our Ninth Circuit cases, play in construing what the Supreme Court has said? Well, there are – I don't have them at my fingertips, but the cases that say that our circuit authority can be relied upon to hold that they're – to reflect Supreme Court cases. I think the Supreme Court said in Wislodin that that line of cases was wrong. Yes. That you can't rely on this Court to say that Supreme – there is established Supreme Court authority. So this Court's decisions in Fowler and in Franklin, those are exactly on point, particularly Fowler. And that case is a habeas case, and it – there was not – there was, you know, no physical evidence. Just like in this case, there was upsetting emotional content to the interactions. And very similar to this case, the boyfriend had – the defendant had been the boyfriend of the mother and had broken up with the mother and gave – created a motive for the girl to be angry and confused. In this case, not only that, but there was also the alcoholism aspect that was very upsetting to the children, and Mr. Hawley lost his temper with them a few times. So the – they run into the convenience store at the end of all this supposedly traumatizing conduct, and they laugh and run and hide and tell the clerk at the convenience store, we're going to fix him. Since Fowler actually cites Van Arsdale, and it was a sex case somewhat similar to this, that's one of your strongest cases, isn't it, to – for EDPA purposes? Yes. Yes, yes. And in particular, because Fowler is so similar factually to this case, I would submit that the magistrate's decision – the magistrate relied extensively on Fowler – that that is the decision this Court should adopt. And that – as I recall, this is a case where the magistrate judge actually agreed with your position and the district judge overruled. That's correct. On both points, on the adult magazines, I just want to take a couple of minutes to address that. This is a different issue than in Mejia, a recent case, which I argued, so I know all about it, where we were talking about propensity evidence. It's not the issue that this was propensity evidence, and therefore there's not a Supreme Court case on point, but rather the other holding, the main sort of holding of Estelle v. McGuire, that you cannot put on completely irrelevant, highly prejudicial evidence that tends to make the trial unfair, and that that is a due process violation. That is the Supreme Court authority here that I'm relying on, because as the magistrate extensively lays out, evidence of women – mature women posing in Playboy and a comic strip do not relate to and are not at all evidence of propensity to have lewd conduct with a 12-year-old little girl. So I think I'll sit down and take my last two minutes as rebuttal. Thank you. May it please the Court. My name is Tammy Warwick, and I represent the Respondent, Appellee, Warden Yarbrough. Counsel, this trial really concerns me, and really the only part of the case that seems to me like a high hurdle for your opponent is the AEDPA standard. It seems really unfair. The idea of the SHIELD law that kept out her playing doctor or whatnot with these three other boys, the idea of it is that a woman should not have to run a gauntlet of being attacked as a slut when somebody's raped her and she testifies against them. Her chastity does not bear on the guilt of the defendant. But with a 12-year-old girl or 11-year-old girl, that's not really the issue at all. It's not whether she sleeps around. It's whether she is a little girl that thinks about sex and talks about sex a lot. And then on the other evidence, I thought it was just incredible to use barely legal penthouse and Playboy and a bunch of other non-pedophile dirty magazines that this fellow had in his stash to show that he's a pedophile. I mean, they tend to show the opposite, that he's attracted to women who are of legal age and has ordinary libido, I guess, instead of perverse libido. It seems like an unfair trial. Why shouldn't that be enough, particularly under this Fowler case? Well, certainly the magistrate judge agreed with you, and while we can debate whether this court or the magistrate judge would have allowed this evidence in on either direct appeal or in their own courtroom. Not debatable with me. Okay. I would have let in, I would have kept out the Playboy, or maybe I'd have put him in if I was a defense lawyer to show his attraction is to mature women and that he's not a pervert. And I think there's no question if I had been the judge, I would have let in what I would not regard as a sexual history, but just part of her development history, that she talked about sex with these three other boys. Well, let me address Fowler first, one of the issues. Fowler is not directly analogous or on point with this situation. Fowler was a situation where the young girl had made false accusations. There was evidence that there was false accusations because of her own statements that she may have exaggerated, and because of the fact that. But didn't you have similar situations here where, I mean, and evidence that showed that she had some pretty explicit things with her brother and comments accusing her mother and all this sort of thing? I mean, am I thinking of the wrong case? Actually, you're thinking of Franklin with the mother. Franklin's case was the mother. That's right. Fowler was a situation where the young girl had also made accusations against other men. Right. And it involved inappropriate touching. And it was a former boyfriend as well as a former friend of the mother's, and the defendant in the case was a boyfriend. In that situation, of the two prior accusations, a jury found one untrue and the police investigated and found the other. There were actual formal accusations made in that case. This case is different because of the fact that the young girl didn't make prior accusations as far as make formal complaints. She made statements to peers about conduct while troubling. We don't know whether that was true or not. But at the end of the day, counsel, let's assume for a minute that the defendant was your brother, and you had this similar situation. He has this young woman on the stand, and all the things that one would normally be able to rely upon to impeach her testimony were forbidden. The salacious part comes in. None of the contrary was permitted. What's fair about that? Why does not that violate the Supreme Court standard of the Sixth Amendment Confrontation Clause? Well, because the Supreme Court has recognized that state evidentiary rules come into play, and you can balance the probative value with the unfair prejudice. And certainly, as were these discussions. Do you think it was appropriately balanced in this case? As far as the accusations, the prior accusations, I think they are not highly probative of the situation here. But the evidence of what he allegedly did was really ‑‑ I mean, this is a ‑‑ I think anybody who has ever had children or have friends or neighbors would read the facts of this case, and they would just say, oh, my God, I can't believe this. How can you possibly, you know, have this kind of thing happen under these circumstances? Certainly child molest cases are difficult, and particularly when there's no medical evidence, as well as rape cases are difficult when it's one person's word against another and in a dating, in a casual dating situation. The rape shield laws, while I agree that one could argue that it's a different situation here, it really is similar. We're asking or we're saying that the trial court should have allowed in evidence. It's troublesome to me that you segued from the child molesting cases to the date rape cases, and I think it's a significant point. The rape shield laws are addressed to the date rape cases. However, who could think badly of a little girl who's maybe just hitting puberty and thinks sex is really entertaining and interesting and just keeps thinking about it? Like, I mean, people might, some people might hold it against an adult woman who was highly unchaste, and that's what the rape shield laws protect against, but who would hold it against a child who played doctor? Well, I'm not sure where the playing doctor comes in. Little children, I don't know if they still call it that. They used to call it playing doctor. The young girl made statements that, three statements. One, that another little boy had made a reference, a sexual reference. One, that weird stuff went on between her and a boyfriend in a closet, which we don't have evidence of what that meant. And then also ñ Yeah, we do, because that seemed to be the settled-upon term of art in this trial for sexual things. But the defense did not ñ although the trial court was going to allow it, the defense decided not to question her about what weird stuff meant. Now, we can draw our own conclusions from that. And the jury could draw its conclusions. And the jury did hear that she used the term weird. But it didn't hear that after they had developed the euphemism weird stuff for sexual things in the trial, the jury did not get to hear her saying that there was weird stuff with this boy in the closet. The jury didn't get to hear that it was with a boyfriend in a closet. But the trial court was going to allow the defense to question on what weird stuff meant. The defense counsel made a judgment call to not cross-examine the victim about that, as well as Scott Westfall, about ñ because the only thing the judge can allow ñ Why would he if he can't get the closet in? Well, but as you said, the jury could have drawn an inference about what weird stuff meant. But that was a judgment call on the defense counsel. But the point is that ñ I mean, you have the slim evidence. Then you have the inability to confront about things that would raise questions in the minds of the jury. And then you throw on top of that these adult magazines with the information that this somehow suggests that this guy is a pedophile. Isn't the aggregate of all of that ñ I mean, it goes to the essence, does it not, of a fair trial? Well, certainly, we're looking at both issues. And the first issue, as has been set out by a respondent, that it was not highly probative, based on the fact she had never made false accusations against an inappropriate touching by another man. She had never gone to the police, never made a report. And also, there was no evidence or anything about the truthfulness. So to call it prior false accusations is a misnomer because they were statements that were made. In the aggregate, when you think of the quality of the evidence that sustains your case, the lack of confrontation and the magazines, in the aggregate, can you really honestly say under Supreme Court jurisprudence that this guy got a fair trial? Yes, Your Honor, because of the fact that ñ because we look at ñ we allow state evidentiary rules to be in place. And in this situation, the standard in looking at the magazine issue and the matchbook is whether there are ñ whether it prevented a fair trial and whether there were any permissible inferences. Now, the state ñ Well, the jury never got to hear the alternative. How would they even know what to offset against what they heard? Well, the jury in any trial doesn't always hear all of the evidence. The standard is ñ Yeah, but the primary evidence, the primary evidence that would have been used to, if not eviscerate, at least raise serious questions about what is alleged, they never heard that. Well, certainly, Your Honor, if there had been error found with the exclusion and the admission, you may look at the cumulative impact. But here there were ñ under the standard of review this Court has to look at, there are no ñ there are no errors and certainly no prejudice from the standpoint of the fact that ñ I think you also have to look at the fact that the jury spent a lot of time delivering over this case and whether ñ we don't know what was in their minds, but they did acquit on a couple of ñ couple of charges. It does not appear that they across the board took Mr. Hawley as someone who had bad character and that they ñ  So I don't see any contrary evidence that he would normally have had under the Sixth Amendment. But the ñ again, Your Honor, I mean, looking at the standard of review, that evidence ñ it wasn't unconstitutional for that evidence to come in.  Thank you, counsel. Thank you. First, I want to briefly address this issue about the acquittals. The two counts of molestation that the jury acquitted on were the count where the first ride where the little girl is wearing urine-soaked pants, and the judge reminds her, as she's saying that she had to change ñ that she went and she had to change, but his hands were in her shorts, that she's not wearing shorts on that trip. So she changes her testimony and says, oh, yeah, that nothing happened on that trip, and yet the brother says something did happen on that trip. So clearly, that was ñ the jury just listened to the evidence and saw that that was just completely unbelievable. The other one that they acquitted on was count four, where Reyna specifically said nothing happened, and the little boy said lots of things happened. And so there was ñ and the DA said to them, believe the little girl if you have ñ if they conflict. Specifically, I want to point out that Pennsylvania v. Ritchie is another Supreme Court case that talks about whether evidence the witness's testimony is exaggerated or otherwise unbelievable, not just deliberately false. And that is particularly relevant to a child sex case like this. And I'm glad that Your Honor pointed out the issue about the weird stuff. It was no need to call Scott to testify that she used that term in a sexual-sounding context if we couldn't ñ he couldn't put in what the statement was, that it did pertain to something in a closet. So it would have been irrelevant. And finally, I just wanted to point out that Lucas specifically says that exclusion when the courts are considering whether to allow the defendant's right to bow to some other State interest, it can't be arbitrary, as it was here, and it can't be unrelated or disproportionate to the purposes that it's designed to satisfy. And so the Rafe-Shield Law, the purposes we've discussed, are not served here. Thank you. Any more on AEDPA? Any more AEDPA? Well, those cases are Supreme Court authority, specifically on point. They are established law. They were established at the time the State court issued its decisions. And I believe the Court, as the magistrate did, can rely on those cases. You think the magistrate got it right? I really do, yes. I do. Thank you very much. Thank you, counsel. Holley v. Yorba was submitted.
judges: Tg Nelson, Kleinfeld, M. Smith, Cjj